IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KULUTWE MAYELE FILS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 1:26-CV-1809-RP |
| | § | |
| MS. COLLINS, *Warden, T. Don Hutto Detention Center,* et al., | § | |
| | § | |
| Respondents. | § | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Kulutwe Mayele Fils's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on July 2, 2026. (Dkt. 1). On July 7, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 3). On July 9, 2026, Respondent Miguel Vergara (collectively, "Respondent")[1] filed a timely response in opposition, (Dkt. 5). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

**I. BACKGROUND**

Petitioner, a citizen of the Democratic Republic of the Congo, is currently detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Resp., Dkt. 5, at 1; Pet., Dkt. 1, at 1). Petitioner entered the United States on July 7, 2020, and was placed in expedited removal proceedings under Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225(b)(1). (Resp., Dkt. 5, at 1). Petitioner subsequently expressed fear of returning to his country and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. (*Id.* at 2). An

[1] The Response is filed only on behalf of the federal employee in this action. (Resp., Dkt. 5, at 1 n.1).

asylum officer found that Petitioner had demonstrated a credible fear of persecution or torture. (*Id.*). Accordingly, Petitioner was issued a Notice to Appear ("NTA") by USCIS. (*Id.*). Petitioner was then released on Order of Recognizance ("OREC"). (*Id.*). On or about June 3, 2022, U.S. Immigration and Customs Enforcement ("ICE") cancelled the NTA as an exercise of prosecutorial discretion. (*Id.*).

In December 2025, Petitioner was arrested for "Assault Bodily Injury – Family Violence." (*Id.*). ICE Enforcement and Removal Operations ("ERO") placed a detainer on Petitioner and took him into custody on January 22, 2026, following his release from the Travis County Correctional Complex. (*Id.*). Petitioner was issued a new NTA. (*Id.*). On June 2, 2026, an immigration judge denied Petitioner's applications for relief and ordered him removed to the Democratic Republic of the Congo. (*Id.*). On June 22, 2026, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"), which remains pending. (*Id.*).

Respondent asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(A)(ii).[2] (*Id.* at 2–3). Petitioner alleges that he is entitled to a writ because his detention without legal justification and without a chance to seek redetermination of his custody status violates his rights to substantive and procedural due process guaranteed by the Fifth Amendment, among other arguments. (Pet., Dkt. 1, at 6–7).

## II. DISCUSSION

### A. Petitioner's Due Process Claims

This Court previously interpreted 8 U.S.C. § 1225(b)(2) as not applying to noncitizens like Petitioner who has been residing in the country for years, as opposed to a noncitizen present in the United States who has recently arrived and is actively seeking admission. *See, e.g.*, *Guzman v. Bondi*, ---

---

[2] The Court notes that, although Respondent point outs that Petitioner was arrested for "Assault Bodily Injury – Family Violence," (Resp., Dkt. 5, at 2), Respondent does not claim to have detention authority based on that arrest. (*Id.* at 2–3) (asserting detention authority under § 1225(b)(1)(A)(ii)).

F. Supp. 3d ---, No. 1:25-CV-2055-RP, 2025 WL 3724465 (W.D. Tex. Dec. 23, 2025). This interpretation was rejected by a Fifth Circuit panel. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Buenrostro-Mendez* addressed only statutory interpretation. Then, on July 2, 2026, the Fifth Circuit held in a published opinion that detainees held in immigration detention pursuant to 8 U.S.C. § 1225(b)(2) without a bond hearing for longer than ninety days must be released. *Sosnava Rodriguez v. Ortega*, No. 26-50183, --- F.4th ---, 2026 WL 1906557, at *17 (5th Cir. July 2, 2026). The Fifth Circuit's ruling considered § 1225(b)(2) only; as such, the Court turns to Petitioner's claim for release under the Due Process Clause as a result of his mandatory detention under § 1225(b)(1).

Respondent's attempt to distinguish this case from others frequently before Court by arguing Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1), rather than the "catchall" provision contained in 8 U.S.C. § 1225(b)(2), is immaterial to this Court's analysis of Petitioner's due process claims. (Resp., Dkt. 5, at 2–3). In other similar cases before the Court, Respondent asserts that the BIA decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025) governs petitioners' claims and dictates that they are subject to mandatory detention. Here, according to Respondent, because Petitioner was initially placed in expedited removal proceedings, then transferred to full removal proceedings based on his credible fear claim, he is subject to mandatory detention pursuant to a different BIA decision, *Matter of M-S*, 27 I&N Dec. 509 (2019). (*Id.* at 1). Because Petitioner argues 8 U.S.C. § 1225(b) is unconstitutional as applied to him because it violates his due process protections, the Court "finds the fact that Petitioner is detained under Section 1225(b)(1) versus 1225(b)(2) inconsequential for purposes of its analysis because both require mandatory detention and such detention the main issue raised by Petitioner." *Chauhan v. Noem*, No. 3:25-CV-00574-DB, at 8 n.5 (W.D. Tex. Dec. 8, 2025); *see Hassen v. Noem*, No. 3:26-CV-00048-DB, 2026 WL 446506, at *2 (W.D. Tex. Feb. 9, 2026). As such, the Court proceeds with the due process analysis it has undertaken in other similar matters before it.

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Contrary to Respondent's argument, (Resp., Dkt. 5, at 5–6), "*Thuraissigiam* does not foreclose [Petitioner's] due process claims." *Ochoa v. Vergara*, --- F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025)). There are "two key points of distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("For these reasons, an alien in respondent's position has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added). Petitioner "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam* suggests [he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Id.* By contrast, Petitioner has lived in the United States for approximately five and a half years prior to his detention. (Resp., Dkt. 5, at 1). For constitutional purposes, Petitioner's time living in the United States differentiates him from the petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."[3] *Id.*

Because Petitioner validly makes a due process argument, the Court will address whether Petitioner has succeeded on his procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976). "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors weigh in Petitioner's favor. First, "[b]ecause he spent [approximately five and a half years] at liberty in the United States, [Petitioner] possesses a cognizable interest in his freedom from detention." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025). Moreover, especially given that Respondents released Petitioner on his own recognizance and permitted him to live in the United States for a substantial period of time after his entry in 2020, "they cannot revoke that liberty without an individualized determination of the need to do so." (Resp., Dkt. 5, at 2; *Hassen*, 2026 WL 446506, at *2). This interest "deserves great weight and gravity." *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025) (citations omitted).

---

[3] *See also Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *12 (W.D. Tex. Feb. 26, 2026) (quoting *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)). ("Further, even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'").

The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this "automatic continued deprivation of liberty for a noncitizen." *Id.* at *7. As to the third factor, "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Id.* at *6. "In any event, if such concerns exist, they would be squarely addressed" at a bond hearing. *Lopez-Arevelo*, 801 F. Supp. 3d at 687. Regardless, the government "conducted [bond hearings] for decades until its reinterpretation of the law earlier this year," reducing any purported interest in ceasing to hold meaningful bond hearings. *Id.* (citations omitted). As such, all three factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause.

Federal district courts in Texas, including this Court, have likewise found that similar instances of detention violated a Petitioner's right to procedural due process. *See, e.g.*, *id.*; *Ochoa*, ---F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2–4; *Vieira*, 2025 WL 2937880, at *7 ("In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights."); *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21, 2025) ("[T]he Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, [petitioner] is entitled to due process and succeeds in his as-applied challenge."); *Ortega-Aguirre v. Noem*, No. 4:25-CV-04332, 2025 WL 3684697, at *3 (S.D. Tex. Oct. 10, 2025) ("Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he 'has been detained since August of 2025 without any individualized assessment of flight risk or dangerousness.'"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) ("[T]he Court holds that denying Petitioner a bond hearing under § 1225(b)(2) deprives him of procedural due process protections under the Fifth

Amendment."); *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) ("[T]he Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process"); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *10 (W.D. Tex. Oct. 21, 2025) (finding "that detaining [petitioner] without any individualized assessment of his flight risk and dangerousness deprives him of his constitutional right to procedural due process," and collecting cases); *George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at *4 (N.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, No. 3:25-CV-02935-S-BW, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026) ("[D]etaining [petitioner] without a bond hearing violates his Fifth Amendment rights.").

**B. Subject Matter Jurisdiction**

Having found a constitutional violation here, the Court concludes it need not reach Petitioner's other claims in his Petition. But, the Court will briefly address Respondent's arguments as to the Court's jurisdiction over this matter and Petitioner's failure to exhaust his administrative remedies. First, Respondent argues that because Petitioner challenges his detention pending removal proceedings, this Court is stripped of jurisdiction to review his challenge under the jurisdiction stripping provisions of the INA. Respondent asserts 8 U.S.C §§ 1252(b)(4),[4] (b)(9), and (g) as potential bars to this Court's jurisdiction. (Resp., Dkt. 5, at 4−5). The Court evaluates each in turn.

[4] Respondent cites 8 U.S.C. § 1225(b)(4) for the proposition that "[e]ven if the alien claims he is not appropriately categorized as an applicant for admission subject to § 1225(b), such a challenge must be raised before an immigration judge in removal proceedings." (Resp., Dkt. 4, at 6). Section 1225(b)(4) deals with review of favorable decisions in asylum interviews; the Court presumes that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), which discussed the scope and standard of review for orders of removal, and will rule on that basis and refer to § 1252(b)(4) in this opinion. However, if Respondents intended to refer to § 1225(b)(4) as a jurisdictional bar to Petitioner's claims, the Court finds nothing in that subsection that bars its jurisdiction here, as Petitioner is not seeking review of a favorable decision in an asylum interview.

First, 8 U.S.C. § 1252(b)(9) channels "[j]udicial review of all questions of law . . . including interpretation of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" to the appropriate federal court of appeals—here, the Fifth Circuit. However, the Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). Petitioner's challenge to his continued detention without bond as unlawful under the INA, the Administrative Procedure Act ("APA"), and U.S. Constitution does not fall into any of those categories. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."). Rather than challenging his removal proceedings, Petitioner challenges the lawfulness of his detention without bond during the pendency of his removal proceedings. Thus, § 1252(b)(9) poses no bar.

Second, to the extent that Respondent invokes § 1252(b)(4), that section fails to assert a valid jurisdictional bar for the same reasons. Under 8 U.S.C. § 1252, titled "Judicial Review of Orders of Removal," Subsection (a)(1) indicates that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except as provided in subsection (b)." *See* 8 U.S.C. § 1252(a)(1). Section 1252(b) generally, and (b)(4) specifically, elaborates on "requirements for review of orders of removal" as set forth in Subsection (a)(1). Because Petitioner does not assert a challenge to an order of removal, nothing in that subsection bars Petitioner from seeking relief from his continued detention in this case.

Third, 8 U.S.C. § 1252(g)—unless other laws provide jurisdiction—strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or

action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). However, as interpreted by the Supreme Court, this Section applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Thus, § 1252(g) does not apply to all claims with any relationship to deportation proceedings. Because Petitioner challenges the lawfulness of his continued detention during the pendency of his removal proceedings, it is not a challenge to one of the "three discrete events along the road to deportation" to which § 1252(g) applies. *Reno*, 525 U.S. at 482. As such, Respondent cannot assert a jurisdictional bar to the instant petition.[5]

Finally, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of *Matter of Yajure Hurtado*). Respondent argues that Petitioner must exhaust his remedies by seeking a bond determination from the immigration court. (Resp., Dkt. 5, at 7–8). But Respondent simultaneously contends that Petitioner is subject to mandatory detention without a

[5] The Court also notes that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *See Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of *Matter of Yajure Hurtado*).

bond hearing. (*Id.* at 2–3). By Respondent's own interpretation of 8 U.S.C. § 1225, Petitioner's exhaustion of administrative remedies would be futile.

**C. Relief**

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar situations." *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13−14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *16–18 (W.D. Tex. Feb. 26, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ---, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025)) (explaining, after finding a due process violation, that release is the proper remedy rather than a bond hearing because "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out."). The Court agrees that the appropriate remedy for unlawful detention is release and will order Petitioner's immediate release.

**III. CONCLUSION**

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall immediately release Petitioner from custody;
2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case, and shall return Petitioner's identification documents and possessions upon his release;
3. As soon as is practicable, and no less than two hours before release, Respondents shall notify Petitioner and any identifiable next of kin of the exact location and time of Petitioner's release;
4. Respondents are enjoined from further detaining Petitioner without first conducting a constitutionally adequate bond hearing, scheduled with notice to Petitioner and Petitioner's attorney, if any.

**IT IS FINALLY ORDERED** that Respondents shall provide a status report **on or before July 14, 2026**, detailing their compliance with this Order.

**SIGNED** on July 10, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE